IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CARGILL, INCORPORATED, a Delaware corporation,

    Plaintiff,

v.

JASON KUAN

    Defendant.

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Cargill, Incorporated. ("Cargill"), for its Complaint against Jason Kuan ("Kuan"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Cargill is a privately held corporation, incorporated in Delaware. Cargill is headquartered at 15407 McGinty Road West, Minnetonka, MN, 55391.

2. Defendant Kuan was a resident of Toronto, Ontario, Canada. On information and belief, Kuan is still a resident of Canada, but intends to change his residence to Colorado in or around August 2014.

3. This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as Cargill is a citizen of Delaware and Minnesota and Kuan is a Canadian resident, and the amount in controversy exceeds U.S. $75,000 exclusive of interest and costs.

4.   This Court has general and specific jurisdiction over Kuan because in or around the summer of 2014, he accepted employment with JBS USA ("JBS"), which is headquartered in Greeley, Colorado. Upon information and belief, Kuan is presently in Greeley, Colorado reporting for work with JBS. Upon information and belief, as a result of his employment with JBS, Kuan will be moving to Colorado in and around August 2014. Further, many of the activities regarding misappropriation and dissemination of trade secrets and highly confidential information are now occurring in Colorado and this judicial district.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Kuan committed alleged unlawful acts in this district.

## FACTUAL BACKGROUND

**A.   Cargill's Business**

6.   Cargill is an international producer and marketer of food and agricultural products. Cargill's business operations span a range of markets and geographies. One of those businesses is Cargill Meat Solutions ("CMS"), a subsidiary transacting business in the meat industry.

7.   CMS manufactures beef, pork and turkey and oversees foodservice, food distribution and case ready businesses. CMS's operations are carried out by separate business units, including Cargill Case Ready. Cargill Case Ready provides prepackaged beef and pork meats to leading food retailers in the United States and Canada.

**B.   Kuan's Employment**

8.   Kuan began employment with Cargill on or about June 6, 1994. When he resigned on August 1, 2014, his title was Managing Director McDonald's Canada and he worked for the

Cargill Value Added Meats business. Prior to that, and up until June 2014, Kuan worked for Cargill's Case Ready business.

9. During Kuan's twenty year tenure with Cargill, Kuan has played a large role in Cargill's Case Ready business. Although Kuan was the Vice President and General Manager of Cargill Case Ready Canada, he had extensive leadership, experience, and involvement with both the United States and Canadian Case Ready markets, including, but not limited to the following:

   a. Kuan was an integral member of the Cargill Case Ready Leadership Team ("CRLT") that oversaw all of Cargill's North American Case Ready business;

   b. Kuan was responsible for the operations component of Cargill's Strategic Plan for Case Ready North America, which was completed in March 2014;

   c. There were approximately 1,250 people under Kuan's leadership in the Case Ready business;

   d. Kuan was involved, in some capacity, with all six North American Case Ready startups;

   e. Kuan's Canadian customers included all major retailers;

   f. Kuan has had interaction with Cargill Case Ready's major North American retailers;

   g. In his role on the CRLT, Kuan regularly visited all of the Case Ready plants;

   h. Kuan led the Joint Business Planning process for Cargill with senior leaders at a major retailer.

### C. Cargill's Efforts to Maintain the Confidentiality of its Business Information

10. Given the nature of Kuan's position, he received access to highly confidential and proprietary information regarding customers, pricing, production, strategy and other matters that Cargill competitors, the general public, and even other employees do not have access to. Cargill has taken steps to protect such information from disclosure, including requiring employees to sign confidentiality agreements. In fact, on January 14, 1999, Kuan executed an Employee Confidential Information, Invention and Originals Works of Authorship Agreement ("Confidentiality Agreement"). A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference. The agreement states in pertinent part:

> In consideration of my employment by ("Cargill" as used herein includes Cargill, Incorporated, its existing and future subsidiaries and affiliated companies), I hereby agree as follows:
>
> I.  Confidential Information
>
> A.  I will not make any unauthorized disclosure to Cargill of any trade secret of others.
>
> B.  I will not at any time, either during or after the termination of my employment with Cargill, use, disclose or communicate to any person, firm, or corporation in any manner whatsoever any Trade Secret of Cargill or any confidential information of Cargill except as required by my duties as Cargill, by law or court order, or if I am a lawyer, by the rules of professional conduct. This includes without limiting the generality of the foregoing, information regarding any of its customers, the prices it obtains or has obtained from the sale of, or at which it sells or has sold, its products, or any information concerning the business of Cargill, its manner of operation, its plans, processes, or other data. I understand that the same are important, material, and confidential and may gravely affect the effective and successful conduct of Cargill's business, and Cargill's goodwill, and that any breach of the terms of this paragraph shall be a material breach of this agreement.

    C.    I will return to Cargill, at the time of termination of my employment with Cargill, all confidential information and materials of whatever nature arising from my employment with Cargill (e.g., manuals, employee identification and business cards, etc.).

    D.    I understand that my misuse of computers, telecommunications, and associated technologies will greatly increase the potential for loss and compromise of Cargill resources and/or information, and Cargill's exposure to possible risk of legal or regulatory prosecution. Accordingly, I agree to:

    1.    Not to disclose to third parties or use on their behalf the manner in which Cargill designs its computer systems and gathers, stores, and disseminates information.

. . . .

    9.    Not install unlicensed software on any computer system by making unauthorized transfer, print, copy, or reproduction of any computer software or related material owned by third parties or licensed to Cargill.

    10.    Not to make any unauthorized transfer, print, copy, or reproduction of any computer software or related materials owned or licensed by Cargill.

11. Furthermore, access to Cargill highly confidential and proprietary information is restricted by electronic means such as computer passwords and levels of access established by management of each business unit. Levels of access vary by employee, with managerial employees having greater access than non-managerial employees.

12. Kuan received a laptop computer from Cargill in connection with his employment from which he could obtain highly confidential and proprietary information of the business unit to which he had been granted access. Given that Kuan had a Cargill laptop from which he could and did access the electronic information, there was no business need for him to transfer such information onto an external storage device, such as an external hard drive. In fact, in a rare instance where it would be appropriate to transfer highly confidential and proprietary information onto an external memory device, Cargill distributes specially approved, secure

devices for such purposes. Employees are subject to disciplinary action for improper handling and disclosure of its highly confidential and proprietary information.

13. On August 1, 2014, Kuan suddenly resigned and left the job without prior notice. Cargill found the circumstances of Kuan's resignation to be suspicious since he had given no indication of his intent to quit. Since the circumstances of Kuan's departure were suspect, a forensic analysis was conducted on Kuan's laptop. The results of the investigation were astonishing, revealing that absent any business justification whatsoever, on or about July 7, 2014, and prior to Kuan's sudden departure, he downloaded hundreds of highly confidential and proprietary Cargill Case Ready files to an external hard drive. Kuan did not return this external hard drive to Cargill upon his resignation. Cargill believes that Kuan possesses the following highly confidential and proprietary information, among other things:

   a. Strategic plans for Case Ready North America, which include customer plans, financials, key focus areas, and growth plans;

   b. Presentations on Case Ready plant transitions, which include capital investments, plant layout, project spending, pictures of the plant floor and equipment, staffing plans, yield info, customer plans, volume by customer, audit findings, functional area plans and progress;

   c. Presentations to CRLT on progress for Case Ready Canada plants, which include information regarding new packaging systems, plant layout, and operational planning.

14. The Cargill information accessed and downloaded by Kuan prior to his termination is unknown to Cargill Case Ready competitors. It is not publically available, and all of it was subject to efforts by Cargill to maintain its secrecy.

15. The forensic investigation also revealed that on at least two occasions in July 2014, Kuan sent emails with attached Cargill Case Ready highly confidential and proprietary information to an email address external to Cargill, jpkuan@hotmail. On information and belief, jpkuan@hotmail is Kuan's personal email address.

### D. Kuan is Now Employed by a Direct Competitor of Cargill

16. On or about August 1, 2014, Cargill learned that Kuan's new employer was JBS USA ("JBS").

17. On information and belief, Kuan began working for JBS in August 2014.

18. JBS is one of Cargill's largest competitors. According to its website, JBS USA is "a leading producer and exporter" of beef, lamb, pork and chicken.

19. On information and belief, on or about August 6, 2014, JBS sent an announcement regarding Kuan and its new Case Ready Division. JBS announced that is was forming a new stand-alone Case Ready Division to be led by Jason Kuan. JBS highlighted Kuan's years of experience with Cargill, including the fact that he had most recently led Cargill Case Ready Canada.

20. Kuan's use of Cargill Case Ready's highly confidential and proprietary information would allow him to reap an unfair and unlawful advantage over Cargill. Kuan should not be permitted to keep, duplicate or an in any manner use the highly confidential and

proprietary information siphoned from Cargill Case Ready for his benefit or that of his new employer.

## CLAIMS FOR RELIEF

### COUNT 1
### BREACH OF CONTRACT

21. Cargill incorporates the foregoing paragraphs as if fully restated herein.

22. On or about January 14, 1999, Kuan executed a Confidentiality Agreement with Cargill.

23. Kuan owed Cargill the contractual duties set forth in the Confidentiality Agreement, which is incorporated in this Complaint.

24. As a result of the actions complained of herein, Kuan has breached his Confidentiality Agreement.

25. As a direct and proximate result of said acts, Cargill has suffered damages that were foreseeable by Kuan in an amount to be determined at trial.

### COUNT 2
### VIOLATION OF COLORADO UNIFORM TRADE SECRET ACT

26. Cargill incorporates the foregoing paragraphs as if fully restated herein

27. Cargill is one of a small number of companies competing in the Case Ready Meat business. As a pioneer and leader in this industry, Cargill has spent a considerable sum of money, time, and energy in research and development and forming its policies, practices, procedures and strategies for future product development and marketing.

28. The information and data maintained by Cargill as a result of these efforts are not generally known to the outside public.

29. The fact that this information and data is kept secret at Cargill allows Cargill to keep an edge on its competitors and flourish in the market place.

30. Cargill has made all reasonable efforts to keep this information and data secret and prevent them from disclosure outside of Cargill.

31. Just prior to leaving Cargill, Kuan accessed hundreds of highly confidential and proprietary files, and saved them to an external source or emailed them to a personal email address. There was no business justification, nor did Kuan have the authority, to access these files in this manner.

32. As Kuan was an executive level employee, he knows off-hand much, if not all, of Cargill's Case Ready competitive information regarding its business which would be valuable to any competitor of Cargill. In his new position at JBS, nearly identical to the position he previously held at Cargill, Kuan can use his knowledge of Cargill's highly confidential and proprietary information combined with the information he took from Cargill to unlawfully compete.

33. Kuan will inevitably disclose and use the valuable Cargill information in the course of his employment position with JBS because he is developing a Case Ready meat business for JBS; this is the same industry and the same type of position Kuan had for many years at Cargill. The likelihood of inevitable disclosure constitutes threatened disclosure of Trade Secrets.

34. Absent Kuan's unjustified, intentional, wrongful and threatened taking and use of Cargill's highly confidential and proprietary information, Cargill would maintain the confidentiality of its business practices, customer information, pricing, production, strategy and

other matters that are unknown to Cargill competitors and the general public, and protect its trade secrets.

35.     Kuan's activities, current and threatened, are causing severe irreparable injury to Cargill, including in the form of loss and diminution of its competitive positions in the marketplace, loss of its ability to offer unique products, and lost opportunities to capitalize on its status in the marketplace, for which there is no adequate remedy at law. In the alternative, such activities are directly and proximately causing significant damages to Cargill in an amount to be proved at trial.

### COUNT 3
### COMMON LAW CONVERSION

36.     Cargill incorporates the foregoing paragraphs as if fully restated herein.

37.     While employed at Cargill, Kuan had access to all of Cargill's Case Ready business information, including plant layout schemes, vendor agreements, automation and technology information.

38.     As Cargill's employee, Kuan was entitled to access and use Cargill's Case Ready business information. Kuan was not, however, authorized to access, copy and retain Cargill's business information for his personal use and benefit.

39.     On or about, July 7, 2014, Kuan intentionally accessed and copied hundreds of Cargill Case Ready business files for his own personal use and benefit. This unauthorized access and copying of Cargill's business files deprived Cargill of its sole possession and control of its electronic business information.

40.     Kuan's unauthorized taking of Cargill's business information is directly and proximately causing significant damages to Cargill in an amount to be proved at trial. Kuan's

actions were also malicious, willful and wanton, such that the imposition of punitive damages is appropriate.

## COUNT 4
## BREACH OF FIDUCIARY DUTY

41. Cargill incorporates the foregoing paragraphs as if fully restated herein.

42. Kuan worked for Cargill for approximately 20 years. He was an employee of Cargill until August 1, 2014. Kuan played an integral role in Cargill's Case Ready North America business. As an employee of Cargill, Kuan owed a fiduciary duty to Cargill, including a duty of loyalty. Kuan owed Cargill the duty to act solely for Cargill's benefit while employed by Cargill.

43. On July 7, 2014, Kuan accessed and copied hundreds of Cargill Case Ready's highly confidential and proprietary files. On information and belief, at the time Kuan accessed those files, he had already accepted a position with JBS, Cargill's competitor and/or was already intending to tender his resignation on August 1, 2014.

44. On information and belief, Kuan actively accessed and copied Cargill's highly confidential and proprietary information, while employed at Cargill, for the purpose of using that information as reference materials as he set up a directly competitive Case Ready business for Cargill's competitor, JBS.

45. Kuan's breach of fiduciary duty to Cargill has caused damage to Cargill, including in the form of loss and diminution of its competitive advantage in the marketplace, loss of its ability to offer unique products, and lost opportunities to capitalize on its status in the marketplace in an amount to be proved at trial. Kuan's actions were also malicious, willful and wanton, such that the imposition of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Cargill requests that this Court enter judgment in its favor granting the following relief:

1. Enter an Order, preliminarily and permanently enjoining Kuan and all persons acting or claiming to act on Kuan's behalf, from disclosing, revealing, using, showing, or otherwise disseminating any and all of Cargill's trade secret and highly confidential information;

2. Enter judgment in favor of Cargill and against Kuan for damages in an amount to be determined at trial;

3. Award Cargill punitive damages arising out of Kuan's willful act of conversion and breach of fiduciary duty complained of herein;

4. Enter judgment in favor of Cargill and against Kuan for pre-judgment interest, as provided by law;

5. Enter judgment in favor of Cargill and against Kuan for its reasonable costs and attorneys' fees, as provided by statute or otherwise as provided by law; and

6. Award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Cargill, hereby demands a trial by jury of all issues so triable.

Respectfully submitted this 21st day of August, 2014.

*s/Tucker K. Trautman*
Tucker K. Trautman
Case Collard
DORSEY & WHITNEY LLP
1400 Wewatta Street, Ste. 400

Denver, CO 80202
Telephone: (303) 629-3400
Email: trautman.tucker@dorsey.com
Email: collard.case@dorsey.com
**Attorney for Plaintiff, Cargill, Incorporated**

13

## VERIFICATION

STATE OF Kansas     )
                    ) ss:
COUNTY OF Sedgwick  )

PERSONALLY APPEARED before the undersigned notary public, authorized to administer oaths, Jody Horner, who on oath deposes and states that she is the President of Cargill Meat Solutions Corp., a subsidiary of Cargill, Inc., authorized by Plaintiff Cargill, Inc., ("Cargill") to act on its behalf herein, that she has read the above and foregoing Verified Complaint and that she either has personal knowledge of the facts contained in the Verified Complaint or has spoken with appropriate employees of Cargill and/or its affiliates and/or reviewed pertinent documents, and that the facts contained in the Verified Complaint are true and correct to the best of her knowledge, information and belief.

_____
JODY HORNER

SUBSCRIBED AND SWORN TO before me this 21 day of August, 2014.

_____
Notary Public
My commission expires: 9-6-15

NOTARY PUBLIC - State of Kansas
VICKI EMEOLA
My Appt. Expires 9-6-15

13